In the Matter of the Estate of LOUIS SHULSKY, Deceased. ELGIN SHULSKY et al., Appellants; ALLEN J. GOLDSTEIN, Special Guardian, Appellant; RUBIN SHULSKY, Respondent.— In a proceeding by the executor for judicial settlement of his second supplemental account, (1) certain objectants and a special guardian for infant contingent remaindermen appeal from portions of a decree of the Surrogate's Court, Kings County, dated April 22, 1968, which decree *inter alia* confirmed, with modifications, a Referee's report, and (2) one of said objectants, Elgin Shulsky, also appeals from an order of said court, dated January 26, 1968, which denied his application that the Surrogate disqualify himself from acting in the proceeding. The portions of the decree excepted from the appeal are as follows: Elgin Shulsky has not appealed from (1) subparagraphs 4, 5, 6 and 10 of the first decretal paragraph, which paragraph contains the adjudications upon the Referee's report, and (2) the second decretal paragraph, which awards the Referee a fee and reimbursement of disbursements; and the special guardian and objectants Arlene Weinstein and the trustees of a trust for Hilda Weinstein have not appealed from (1) subparagraphs 4, 5, 8 and 9 and subdivisions (a), (b), (c), (d), (e) and (h) of subparagraph 6 of the first decretal paragraph and (2) the second decretal

paragraph. Order of January 26, 1968 affirmed. No opinion. Decree of April 22, 1968 modified, on the law and the facts, as follows with respect to first decretal paragraph: (1) In subparagraph "1", substituting the word "approved" for the word "disapproved", and substituting the words "are sustained" for the word "dismissed". (2) In subparagraph "3", striking out everything after the words "or to his corporations" and substituting therefor the following: "is approved and the said objections are sustained". (3) Striking out subdivision "(g)" of subparagraph "6" and substituting therefor the following: "All questions concerning the adjustment of prepaid insurance among estate corporations are reserved for later determination by the Surrogate if such questions are properly submitted by the executor in a subsequent accounting." (4) In subparagraph "7", striking out everything after the name "Rubelgin Holding Corporation" and substituting therefor the following: "is approved and the said objection is sustained". (5) In subparagraph "8", (a) striking therefrom the following provision: "is modified to the extent of directing that the Executor shall be surcharged and shall pay the sum of $143.46 to the Estate" and substituting therefor the following: "is modified to the extent of directing that the Executor shall charge said sum of $10,901.22 to the corporations of the beneficial interests other than those of Elgin Shulsky as follows: $2,500 to the corporations in the Sarah Shulsky Trust, $4,200.61 to the corporations in the Hilda Weinstein Trust, and $4,200.61 to the corporations whose stock is owned by Rubin Shulsky;" and (b) striking therefrom the portion which begins with the words "and that Rubin Shulsky for his corporations" and ends with the words "Sarah Shulsky Trust pay for its corporations to Elgin Shulsky for his corporations the sum of $3,832.67" and substituting therefor the following: "equally among the beneficial interests other than those of Elgin Shulsky." (6) In subparagraph "9", by striking out everything after the word "received" and substituting therefor the words "is approved". (7) In subparagraph "10", striking out the figure "$28,225", and substituting therefor the figure "$22,220". (8) In subparagraph "11", striking out the portion which begins with "Rubin Shulsky, as Trustee" and ends with the words "for said services" and substituting therefor the following: "the executor (a) pay to the Sarah Shulsky Trust the sum of $834.17 and to (b) also pay to the Sarah Shulsky Trust $9,714.92, which amount was overcharged to said Trust, and charge said amount of $9,714.92 to the corporations of the beneficial interests other than those of said Trust as follows: $1,457.24 to the Elgin Shulsky corporations, $4,128.84, to the Hilda Weinstein Trust corporations, and $4,128.84 to the Rubin Shulsky corporations." As so modified, decree affirmed. Costs are awarded jointly to all parties filing separate briefs, payable out of the estate, to cover all the appeals. We agree with, and sustain, the Referee's recommendation that the executor should be surcharged for interest levied in the total sum of $4,249.47 against the estate, resulting from his late payment of Federal and State capital gain taxes on the sale of an estate corporation (decree, first decretal par., subpar. 1). The Surrogate's determination that the executor acted with reasonable prudence in withholding such payments is not supported by the record. The burden was upon the fiduciary to show that the delays were justified (*Matter of Ducas*, 109 N. Y. S. 2d 17, affd. 279 App. Div. 730; 129 A. L. R. 449). His explanation that he purposely withheld making such payments until seven months after they were due, in order to ascertain whether all or any part of the tax might be saved, is insufficient and unsupported by any corroborating evidence. Furthermore, he introduced no estate records to buttress his claim that the funds used to pay the taxes were drawing interest in savings accounts during the seven-month period and that he also took a subsequent tax deduction for the interest levied against the estate

for these late payments. Thus, he should not be allowed to set off the alleged bank interest and tax deduction against the surcharge. Where an executor has failed to keep or produce clear and accurate accounts and records, all presumptions are against him and all obscurities and doubts are to be taken adversely to him (34 C. J. S., Executors and Administrators, § 895). The Surrogate also erred in allowing a personal setoff claim of the executor so as to cancel the Referee's recommendation for a surcharge of $19,117.23, plus interest, payable to Elgin Shulsky or his corporations (decree, first decretal par., subpar. 3). This setoff claim, against Elgin Shulsky, was for 10% of certain profits allocable to the minority corporate stock which was sold to Elgin Shulsky, i. e., profits from July 31, 1961, the date Elgin Shulsky received equitable title, to October 1, 1963, the date of closing. In the alternative, the executor sought interest for the same period on the purchase price of about $349,000 charged to Elgin Shulsky for such stock. However, stipulations which had been entered into by the parties, and incorporated in an earlier accounting decree, and the actions of the executor himself in a similar unrelated sale in which he was the vendee, clearly demonstrate that each beneficiary was to enjoy all increments from his interests in estate corporations sold or assigned to him, as of July 31, 1961, and that all closing adjustments were to be computed as of that date. Therefore, the setoff claims should be disallowed and the recommendation for a surcharge of $19,117.23 should be sustained. We also sustain the Referee's recommendation for a surcharge against the executor of $509.85, payable to Elgin Shulsky, because of the executor's wrongful withdrawal of that amount from an Elgin Shulsky corporation in order to purchase a desk (decree, first decretal par., subpar. 7). Since the fiduciary did not show, in the alternative, that the charge was a proper levy against the estate, the Surrogate erred in directing that the estate be so charged. The burden of proof as to the propriety of payment of all claims and expenses is upon the accounting party (*Matter of Taylor,* 251 N. Y. 257, 262; *Matter of De Filippis,* 113 N. Y. S. 2d 724). The recommendations of the Referee that the Elgin Shulsky corporations and the Sarah Shulsky Trust corporations should only be charged with 12.5% and 15%, respectively, of the office expenses of the estate office are fair and reasonable (decree, first decretal par., subpars. 8, 11). The Surrogate agreed with the executor's allocating roughly 25% of such expenses to each of the four beneficial interests because they were substantially equal in value. However, the Referee correctly took into account the fact that all of the estate corporations of Elgin Shulsky, during the accounting period, were managed by outside management firms, while those belonging to the Sarah Shulsky Trust were partly so managed. In addition, the rent rolls of the Sarah Shulsky Trust were substantially smaller than those of the other beneficial interests. While an exact mathematical determination obviously cannot be made as to the amount that should be charged to each interest, the factors upon which the Referee based his recommendations were cogent and should have been followed. However, since the total office expenses were held both by the Surrogate and the Referee to be fair and reasonable, the executor should not be personally obligated (as the Referee recommended) to pay the excess amounts of $10,901.22 and $9,714.92 charged to the Elgin Shulsky and the Sarah Shulsky Trust interests, respectively; instead, each said amount should be reallocated and charged to the other beneficial interests, as directed hereinabove. Since the Elgin Shulsky corporations were managed by outside management firms during the accounting period, as noted previously, and not by the executor, this court is of the opinion that the Referee's recommendations, vis a vis the executor's compensation for corporate services rendered to the Elgin Shulsky interests, should have been sustained by the Surrogate. Similarly with respect to the

Sarah Shulsky Trust, the record reveals that an outside management firm collected over 85% of the rents and also negotiated many of the leases. Under such circumstances, the Referee's recommended compensation of $12,500 a year, rather than the $18,000 figure of the Surrogate, seems the more appropriate and reasonable. However, with respect to compensation for the executor's services for the Hilda Weinstein Trust corporations, the evidence adduced at the hearing supports the claim advanced by the executor and approved by the Surrogate (decree, first decretal par., subpar. 10). The executor was solely responsible for managing such corporations during the accounting period; the amount sought by him for collecting rents, negotiating leases, making bookkeeping entries, etc., compared favorably with the amount subsequently charged by outside management firms on the same or similar properties. However, the compensation awarded the executor from each trust should be diminished by the cash checks, totaling $6,005, withdrawn by him from corporations in each trust and for which no satisfactory explanations were given. The Referee was correct in holding that vouchers submitted by the executor to justify such withdrawals were summary in nature and revealed almost nothing about the use made of the amounts in question. The burden of proving a claim of an executor for expenses of administration rests upon him and he must show that it was of the value charged (*Matter of Lester,* 172 App. Div. 509). Since the executor did not request in the filed accounting that prepaid insurance for all estate corporations be adjusted equally among the four beneficial interests, and no evidence was adduced at the hearing relative thereto, the issue should not have been decided by the Surrogate (decree, first decretal par., subpar. 6, subd. [g]). However, in a subsequent accounting, the executor may properly bring the matter before the Surrogate for consideration. Beldock, P. J., Christ, Munder, Martuscello and Kleinfeld, JJ., concur.